IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Willie M. Carter, | ) | C/A No. 0:09–1550-PMD-PJG |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Willie M. Carter ("Carter"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

By application dated November 26, 2003, Carter applied for DIB, alleging disability beginning January 28, 2003. Carter's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on July 24, 2006, at which Carter, who was represented by counsel, appeared and testified. The ALJ, after hearing the testimony of a vocational expert, issued a decision on September 26, 2006 denying benefits and concluding that Carter was not disabled.

Carter was fifty-seven years old at the time of the ALJ's decision. He has a college education and past work experience as a science and social studies teacher. (Tr. 70, 77, 610.) Carter alleges disability since January 28, 2003 due to peripheral neuropathy, prostate cancer, diabetes, hypertension, gout, rectal bleeding, hot flashes, and upper extremity muscle loss. (Tr. 54, 64.)

The ALJ found as follows:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since January 28, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease and posttraumatic stress disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity for medium work which involves occasionally lifting and/or carrying a maximum of 50 pounds; frequently lifting and/or carrying up to 25 pounds; and requiring walking or standing, or which requires pushing and/or pulling of arm and/or leg controls; restricted to simple, routine work; with no contact with the public either by phone or in person; working alone or with a small group of co-workers; and with no supervisory duties.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

7. The claimant was born on December 25, 1948 and was 54 years old on the alleged disability onset date, which is defined as an individual closely approaching advanced age. The claimant is currently 57 years of age, which is defined as an individual of advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Since the claimant is limited to essentially unskilled work, he has no transferable job skills from his past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

\* \* \*

11. The claimant has not been under a "disability," as defined in the Social Security Act, from January 28, 2003, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 24-29.)

The Appeals Council denied Carter's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 5-7.) Carter then filed this action.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner

must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775 (4th Cir. 1973).

**ISSUES**

Carter raises the following issues for this judicial review:

Point I:   The ALJ Failed to Properly Assess Mr. Carter's RFC

Point II:  The ALJ Relied Upon Flawed Vocational Expert Testimony[.]

(Pl.'s Br., Docket Entry 11.)

**DISCUSSION**

**A.     Residual Functional Capacity**

A claimant's residual functional capacity ("RFC") "is the most [a claimant] can still do despite [his] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence." See 20 C.F.R. § 404.1545(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC.

As stated above, the ALJ determined that Carter retained the RFC

> for medium work which involves occasionally lifting and/or carrying a maximum of 50 pounds; frequently lifting and/or carrying up to 25 pounds; and requiring walking or standing, or which requires pushing and/or pulling of arm and/or leg controls; restricted to simple, routine work; with no contact with the public either by phone or in person; working alone or with a small group of co-workers; and with no supervisory duties.

(Tr. 24-25.) Carter argues that the ALJ's findings that Carter can lift or carry fifty pounds occasionally and twenty-five pounds frequently and that Carter has no restrictions in pushing, pulling, or moving his neck are not supported by substantial evidence. Specifically, Carter appears to contend that (1) the ALJ erred in relying on the opinions of the non-examining state agency physicians; (2) the RFC is contrary to the medical evidence; (3) the ALJ improperly relied on an absence of limitations in the record; and (4) the ALJ erred in evaluating Carter's credibility.

1. **Reliance on the State Agency Opinions**

The ALJ noted that he gave substantial weight to the conclusion of the state agency physicians and psychologists, which the ALJ indicated supported his conclusion that Carter "is able to perform work activities." (Tr. 25-26.) As an initial matter, Carter argues that the "ALJ's sole reliance upon the opinion of non-examining, non-treating physicians was error." Contrary to Carter's assertion, a review of the ALJ's decision reveals that while the ALJ gave the state agency opinions substantial weight, the ALJ also included a thorough discussion of the medical evidence presented in this matter, including the consultative examinations and the medical records from the Veterans Administration hospital system ("VA hospital"). Therefore, to the extent that Carter's argument is premised on the assertion that the ALJ solely relied on the opinions of the state agency physicians, it is without merit.

Carter next argues that the ALJ's reliance on the opinions of the state agency physicians was erroneous because the physicians (1) failed to mention that Carter had a cervical spine impairment and (2) reviewed only the consultative examination reports and failed to review the treatment records from the VA hospital. Further, Carter appears to argue that the state agency physicians concluded that Carter had no severe physical impairments, which contradicts the ALJ's conclusion that Carter could perform medium work. These arguments do not avail Carter. As stated above, while the ALJ gave these opinions substantial weight, he thoroughly reviewed the medical evidence. The ALJ explicitly discussed and considered the VA hospital treatment records, including the cervical spine MRI scan, in formulating Carter's RFC. Moreover, the ALJ's opinion is not rendered unsupported by substantial evidence simply because he imposed greater limitations on the plaintiff than those imposed by a physician whose opinion was accorded substantial weight. See, e.g., Wilson v. Astrue, C/A No. 2:07cv00068, 2008 WL 4499634, *19 (W.D. Va. Oct. 7, 2008) (finding that substantial

*PJG*

evidence supported the ALJ's RFC determination which gave the claimant the benefit of the doubt and limited the claimant to light work, despite the opinion of several treating sources that the claimant was capable of medium work).

### 2. Medical Evidence

Carter next argues that the ALJ's determination fails to comply with SSR 96-8p in that it is not based on all of the medical evidence. It appears that the crux of Carter's argument is that based on the medical evidence—which Carter asserts reveals that he suffers from degenerative disc disease, cervical radiculopathy, and muscle atrophy—and the ALJ's finding that Carter's degenerative disc disease constitutes a severe impairment, the ALJ erred in failing to indicate how these conditions impacted his upper extremities. Carter appears to contend that these conditions support a finding of greater limitations, specifically with regard to Carter's strength in his upper extremities.

However, a review of the records reveals that contrary to Carter's assertion, none of the sources that examined Carter found weakness in his arms. (See Tr. 235) (indicating that in January 2001, Carter had decreased right arm muscle mass, but he had normal motor strength, tone, and reflexes); (Tr. 215) (indicating that in January 2002, Carter's examination showed his motor functioning was intact and within normal limits); (Tr. 294) (indicating that in July 2004, Carter's muscle mass seemed a little shrunken, but his muscle strength was at least 4/5 if not higher in all extremities); (Tr. 433) (indicating that in December 2004, Carter had some sensory loss in his hands, but he had symmetrical muscle tone, full muscle strength, and normal reflexes); (Tr. 402) (indicating that in September 2005, Carter had symmetrical full strength). The mere presence of a physical disorder is not necessarily disabling; rather, there "must be a showing of related functional loss." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Other than Carter's subjective complaints,

which are discussed below, Carter has failed to point to any medical evidence which support a greater strength limitation.

### 3. Absence of Limitations

Carter next argues that the ALJ improperly relied upon an absence of limitations in the record. In discussing the medical evidence, the ALJ stated that

> [g]iven the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor.

(Tr. 25.) The ALJ also observed that neither consultative examiner indicated any work restrictions. (Tr. 26.) A review of the cases relied on by Carter in support of this argument reveals that several circuits have held that an ALJ may not rely on the silence or omission of a physician or consultant as the primary or substantial evidence to support the ALJ's denial of benefits. (See Pl.'s Br. at 12, Docket Entry 11 at 12.) In this case, however, the ALJ thoroughly examined Carter's RFC in light of all the evidence, and the absence of any limitations by the physicians was but one factor that supported the RFC. See Lee v. Sullivan, 645 F.2d 687, 693 (4th Cir. 1991) (affirming the denial of benefits where "[t]he plaintiff's functional work capacity was thoroughly examined in the light of all the medical evidence, including the disability testimony of the plaintiff himself, by the physicians who had seen the plaintiff and heard all his complaints, including those of pain" and observing that none of those physicians opined that the plaintiff was totally and permanently disabled). Accordingly, the court finds that the ALJ did not err in considering the absence of limitations along with the other medical evidence.

### 4. Carter's Credibility

Finally, Carter argues that the ALJ inappropriately evaluated his credibility in determining Carter's RFC. In evaluating subjective complaints, the United States Court of Appeals for the Fourth

Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). In this matter only the second step is at issue,[1] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id.

In applying the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 25.) Thus, the issue is whether the ALJ properly evaluated Carter's subjective complaints regarding the intensity and persistence of his symptoms and the extent to which they affect his ability to work. See Craig, 76 F.3d at 594. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges [he] suffers." Id. Further, "[i]n analyzing a

---

[1] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).

claimant's subjective complaints, such as pain, an ALJ must consider: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).

In this case, the ALJ expressly considered several factors in discounting the credibility of Carter's subjective complaints, including not only Carter's testimony but also the medical and non-medical evidence. (Tr. 25-26.) Specifically, the ALJ noted that (1) Carter's medications, according to treatment notes, indicate good effects and no side effects; (2) Carter has indicated—either in forms submitted in connection with this matter, in medical reports, or through testimony—that he engages in a variety of daily activities, which are "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations;" (3) the medical evidence indicates mild to moderate clinical findings; (4) Carter has received routine, conservative treatment that is limited to medications, and Carter has not requested alternative treatment; (5) Carter's medication levels have remained constant, suggesting effective symptom management, and Carter has not requested stronger medication; (6) the evidence does not show the general reliable indicators of long-standing, severe, or intense pain; and (7) the treatment notes typically describe Carter as "not appearing in any distress, and alert and oriented with no difficulties in concentration." (Tr. 25.) Further, the ALJ observed that there are no restrictions indicated in the treatment notes.

In arguing that the ALJ erred in discounting his credibility, Carter challenges some of the reasons articulated by the ALJ. Specifically, Carter first argues that while the record may indicate that Carter engages in some of the daily activities indicated by the ALJ, it is unclear as to how often or to what extent that Carter is able to engage in these. Further, Carter testified at the hearing that

he is no longer able to engage in hunting, which is one of the activities listed by the ALJ. Second, Carter argues that the ALJ should not draw any inference from the conservative treatment Carter has received without first considering possible explanations. In this case, Carter speculates that he may have been " 'advised by a medical source that there is no further, effective treatment that can be prescribed or undertake that would benefit [him].' " (Pl.'s Br. at 15, Docket Entry 11 at 15) (quoting SSR 96-7p). In support of this contention, Carter argues that there is a lack of evidence indicating that his cervical condition would be amenable to more intrusive types of treatment. Third, Carter contends that the ALJ improperly "inject[ed] his lay opinion into the record" to infer that Carter's clinical findings were "mild" and argues that the ALJ is required to specifically refer to the evidence supporting his conclusion. (Id. at 16.) Finally, Carter argues that he is entitled to enhanced credibility in light of the fact that he worked as a school teacher for twenty-seven years.

Upon a thorough review of the record as a whole, the court finds that the ALJ conducted a proper analysis in determining the credibility of Carter's subjective complaints. See Craig, 76 F.3d at 595; Gowell, 242 F.3d at 796. In determining that Carter's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible, the ALJ considered Carter's subjective complaints in conjunction with his abilities to perform daily activities and the medical evidence. The ALJ discounted Carter's credibility based on a variety of considerations, only some of which Carter has challenged. Further, there is substantial evidence supporting the ALJ's finding that Carter's complaints regarding the effects of his symptoms are inconsistent with the record. See Gross, 785 F.2d at 1166 (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); see also Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need

not be accepted to the extent that they are inconsistent with available evidence . . . ."). Accordingly, the court may not substitute its judgment for the ALJ's. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Even accepting Carter's arguments as true, the court cannot say that the ALJ's determination on Carter's credibility is not supported by substantial evidence.

**B.    Vocational Expert**

Carter argues that the ALJ erred in relying on the testimony of the vocational expert based on his assertion that it was based on a flawed hypothetical. Carter's argument relies on his argument discussed above that the ALJ did not properly formulate Carter's RFC. For the reasons stated above, Carter has failed to demonstrate that the ALJ's determination concerning Carter's RFC is unsupported by substantial evidence. Therefore, this argument also fails. See Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (noting that "the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations") (emphasis in original); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments.") (internal citations omitted).

## RECOMMENDATION

For the foregoing reasons, the court finds that Carter has failed to show that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 1, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).